**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **(1) KELLY L. FOUTCH, administrator of the** | ) | |
| **Estate of RUSSELL TED FOUTCH, deceased** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 17-cv-431-GKF-mjx** |
| | ) | |
| **(1) TURN KEY HEALTH, LLC** | ) | **JURY TRIAL DEMANDED** |
| **d/b/a TURN KEY MEDICAL, and** | ) | |
| **TURN KEY** | ) | |
| **(2) CREEK COUNTY PUBLIC FACILITIES** | ) | |
| **AUTHORITY,** | ) | **ATTORNEY LIEN CLAIMED** |
| **(3) KELLY BIRCH,** | ) | |
| **Individually and In his Official Capacity,** | ) | |
| **(4) JANE DOE NURSE I,** | ) | |
| **Individually,** | ) | |
| **(5) JANE DOE NURSE II,** | ) | |
| **Individually,** | ) | |
| **(6) JOHN/JANE DOES III-X** | ) | |
| **Individually,** | ) | |
| **Defendants.** | ) | |

## COMPLAINT

**COMES NOW** the Plaintiff, Kelly L. Foutch, Administrator of the Estate of Russell Ted

Foutch, deceased, and files this *Complaint*, and for her causes of action against the Defendants,

alleges and states as follows:

### INTRODUCTORY STATEMENT

1.      On September 30, 2016, Russell Ted Foutch ("Mr. Foutch") was found dead in his

Jail cell at the Creek County Public Facilities Authority ("Jail").

2.      At all relevant times, Mr. Foutch was in the legal custody of the Department of

Corrections, however, he was in the physical custody of the Jail.

1

3.      The Jail contracted with Turn Key, LLC, ("Turn Key") to provide medical staff and services at the Jail in accordance with the Jail's constitutional duties to provide healthcare to its inmate population.

4.      While in Jail, Mr. Foutch began displaying signs of severe medical problems. Mr. Foutch complained of shortness of breath, difficulty breathing and coughing up blood. Mr. Foutch did not receive his prescribed number of breathing treatments as prescribed by an examining physician. Thereinafter, Mr. Foutch's symptoms worsened as did his physical condition. Mr. Foutch, along with other inmates at the jail, reported his deteriorating condition to Jail staff and requested that Foutch receive immediate medical treatment. Jail staff and Turn Key nurses denied Mr. Foutch access to a doctor and refused to place him under any serious medical observation.

5.      Upon information and belief, Mr. Foutch lost consciousness multiple times in front of Jail staff. On at least one occasion, Jail staff ordered Mr. Foutch to walk upright while short of breath to the front of the Jail facilities instead of following basic safety procedures and getting Mr. Foutch a nurse or wheelchair. Multiple inmates, including Mr. Foutch's cellmate, witnessed the conduct of the jail during this time. Additionally, Foutch's family made multiple reports to jail staff concerning his condition.

6.      Upon information and belief, before his death, Mr. Foutch began foaming at the mouth and continued coughing up blood. Mr. Foutch was found unresponsive by Jail staff. Approximately Forty-five (45) minutes later emergency medical technicians arrived at the Jail to transport Mr. Foutch to St. John Sapulpa Emergency Room.

7.      Emergency room doctors noted Mr. Foutch was blue in color when he arrived. Just two (2) minutes after Mr. Foutch entered the hospital, he was pronounced dead.

8.     Jail personnel and employees and/or agents of Defendants were clearly on notice of Mr. Foutch's serious medical issues. On multiple occasions, they had been informed about Mr. Foutch's worsening symptoms, including difficulty breathing and coughing up blood. Jail and Turn Key personnel disregarded the known, obvious and excessive risk to Mr. Foutch's health and safety. Mr. Foutch was not given adequate and/or timely medical treatment despite the obvious and emergent need.

9.     Instead of (1) being admitted to the hospital, (2) seeing a doctor, (3) being provided his prescribed breathing treatments or (4) being placed in a medical observation cell, the Jail kept Mr. Foutch in his cell where he did not receive proper care. Mr. Foutch laid in his cell and slowly died from complications related to pneumonia without ever receiving the medically appropriate treatment and care he so desperately and obviously needed to save his life.

10.     Consistent with the established policies, practices and/or customs, Defendants failed to provide Mr. Foutch with adequate and timely medical care and failed to take other measures to protect him from physical harm, in deliberate indifference to his health and safety.

## JURISDICTION AND VENUE

11.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343 to secure protection of and to redress deprivations of rights secured by the Eighth Amendment to the United States Constitution as enforced by 42 U.S.C. § 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under the color of law.

12.     This court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367, since the claims form part of the same case or controversy arising under the United States Constitution and federal law.

13.    Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

14.    Plaintiff, Kelly L. Foutch ("Foutch") is a resident of Lincoln County, State of Oklahoma and is the duly-appointed administrator of his estate. She was appointed in Lincoln County District Court, Case No., PB-16-90.

15.    Defendant, Turn Key Health Clinics, LLC ("Turn Key"), is a domestic limited liability company in the State of Oklahoma doing business within the Northern District of Oklahoma. Turn Key was, at all times relevant hereto, contracted to provide some or all of the medical needs to the Creek County Public Facilities Authority. Turn Key was, at all times relevant hereto, responsible, in whole or in part, for providing medical services and medication to Mr. Foutch while he was in custody the Jail. Turn Key was additionally responsible, in whole or in part, for implementing the Jail's policies and procedures regarding medical treatment, and in assisting in developing those policies and training and supervision of its employees and/or agents.

16.    Defendant, Creek County Public Facilities Authority was, at all time relevant hereto, a public trust created pursuant to 60 O.S. § 176 et. seq. to run the Jail, as defined by 57 O.S. § 41 et. seq. and is a valid public trust with the County of Creek as its beneficiary. Jail Trust was, at all time relevant hereto, responsible for providing medical services to Mr. Foutch while he was in the custody of the Jail and located in the Northern District of Oklahoma. The Jail was additionally responsible for implementing Jail policies regarding medical care, assisting in developing those policies and in training and supervising employees with regard to said policies.

17.    Defendant, Kelly Birch ("Birch"), was, at all times relevant hereto, the final policymaker of the Jail Trust, who was, in part, responsible for overseeing Mr. Foutch's health and well-being, and assuring that Mr. Foutch's medical needs were met, during the time he was in the custody of the Jail. Birch was also responsible for promulgating rules, training, supervision for all jail staff and employees in charge of the health and well-being of Mr. Foutch. Additionally, Birch was responsible for overseeing the conduct and care provided by subcontractors such as Turn-Key. Birch and the Jail Trust may not constitutionally abdicate their duty to provide proper medical care onto a third party. As Jail Administrator, Birch is being sued in his individual and official capacities.

18.    As Jail Administrator, Birch was, at all times relevant hereto, acting under color of state law as an employee and final policymaker of the Jail Trust, who was responsible for overseeing Mr. Foutch's security, health and well-being, and assuring that Mr. Foutch's medical needs were met, during the time he was in the physical care of the Jail.

19.    Defendants, Jane Doe Nurse I and Jane Doe Nurse II, were, at all times relevant hereto, employed by Turn Key at the time of the incident. Jane Doe Nurse I and Jane Doe Nurse II were deliberately indifferent to Mr. Foutch's medical needs and safety, violated his civil rights, negligently and wrongfully caused his death, and/or encouraged, directed, enabled and/or ordered other Defendants to engage in such conduct.

20.    Defendants, Jane/John Doe III-X, were, at all times relevant hereto, employed by the Jail. Jane/John Doe III-X were deliberately indifferent to Mr. Foutch's medical needs and safety, violated his civil rights, negligently and wrongfully caused his death, and/or encouraged, directed, enabled and/or ordered other Defendants to engage in such conduct.

## FACTUAL ALLEGATIONS

21.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 20, as though full set forth herein.

22.     On March 20, 2015, after a pre-trial hearing in Bristow, Oklahoma Mr. Foutch was remanded to the Jail's custody.

23.     On June 1, 2015 Mr. Foutch stipulated to the allegations contained in a motion to revoke his sentence in Drumright. Mr. Foutch was sentenced to six (6) years at the Department of Corrections but remained at the Jail pending trial on other charges in Creek County District Court.

24.     Upon information and belief, sometime between late August and early September, Mr. Foutch began experiencing, amongst other signs of illness and/or disease, cold like symptoms.

25.     Upon information and belief, approximately one (1) week before Mr. Foutch's death, his condition significantly deteriorated. Mr. Foutch was seen by a doctor who prescribed breathing treatments, which could only be administered by a nurse in the Jail's medical facility, as needed.

26.     Upon information and belief, Mr. Foutch was not given his breathing treatments as prescribed, despite repeated requests by Mr. Foutch and inmates that he receive medical attention.

27.     Upon information and belief, five (5) days before Mr. Foutch died, inmates report Mr. Foutch coughing up blood. His cell mate, a former emergency room technician, reported Mr. Foutch had extreme difficulty breathing, was wheezing and coughing.

28.     Mr. Foutch's health was in poor condition; Foutch was extremely ill and in distress. The Jail, Turn Key, and employees of both knew of this condition and chose to do nothing rather than (1) transporting Foutch to a medical facility, or (2) providing him antibiotics or placing him under medical observation. The jail ratified the actions of its staff and employees who chose to

leave Mr. Foutch in a cell where he ultimately died. The staff and employees of all Jail Defendants did not monitor Mr. Foutch's health or take other measures to ensure his safety and well-being.

29.     Upon information and belief, four (4) days before Mr. Foutch died, he was struggling to breathe. Inmates at the Jail reported that Mr. Foutch sounded as if he had fluid in his lungs. Inmates were so alarmed that they, as a group, rallied together to request that Mr. Foutch receive a medical evaluation. Upon completion of said medical evaluation, Mr. Foutch was told that he needed an antibiotic but would not receive one because a doctor could not be contacted.

30.     Upon information and belief, three (3) days before Mr. Foutch died, he lost consciousness on the floor of the day room in the Jail. No one employed by the Jail or Turn Key came to assist Mr. Foutch. Inmates at the Jail vigorously requested more medical attention for Mr. Foutch but were ignored. Upon further information and belief, Mr. Foutch was also observed coughing up blood, appeared blue, and had jaundiced eyes.

31.     Upon information and belief, two (2) days before Mr. Foutch died, he received a breathing treatment. Mr. Foutch was told Jail staff would come and get him for another breathing treatment, however, that never occurred. Instead, Mr. Foutch continued struggling to breathe throughout the day and night. Mr. Foutch began turning purple as a result of not receiving his requested medical treatment.

32.     Upon information and belief, one (1) day before Mr. Foutch died, Foutch's cell mate found him unconscious on the floor of his cell where he turned purple and apparently was not breathing. Three Jail guards came and made Mr. Foutch walk to the front of the Jail while he complained of shortness of breath, difficulty breathing, and a headache.

33.     Upon information and belief, on the day Mr. Foutch died, Foutch was again coughing up blood. After eating lunch Mr. Foutch returned to his cell where he again lost

consciousness and turned blue. Inmates immediately reported an emergency to Jail staff. At some point, Jail staff responded and called for an ambulance.

34.    Forty-five (45) minutes after Mr. Foutch lost consciousness emergency medical technicians arrived at the Jail to transport him to St. John's Emergency Room of Sapulpa.

35.    Approximately two (2) minutes after Mr. Foutch arrived at the emergency room, the responding doctor pronounced him dead.

36.    Despite the obvious signs that Mr. Foutch was suffering from serious medical problems, Jail Defendants took no action to protect Mr. Foutch from harm or get him the medical attention he needed.

37.    The Jail Defendants disregarded the known, obvious and excessive risk to Mr. Foutch's health and safety, and failed to transport him or take proper actions to address his needs. Despite Mr. Foutch's obvious, serious and emergent medical needs, the Jail and personnel on duty or otherwise responsible for Mr. Foutch's care, did not provide the medical care.

38.    For a significant and prolonged period of time, Mr. Foutch condition posed an obvious, known and substantial risk of death due. At all relevant times, Mr. Foutch had obvious, serious, and emergent medical needs. Jail staff and medical staff knew of, and disregarded, the excessive risks to Mr. Foutch's health and safety. All of the Defendants' failure to provide Mr. Foutch with adequate and timely medical care, protection, or supervision were in deliberate indifference to his health and safety. The Defendants' deliberate indifference to the excessive risks to Mr. Foutch's health and safety was a direct and proximate cause of his death.

39.    Defendant Birch's deliberate indifference to Mr. Foutch's medical needs was in furtherance of and consistent with: (a) policies which the Jail promulgated, created, implemented or possessed responsibility for the continued operation of; (b) policies which Jail and Kelly Birch

had responsibility for implementing; and (c) established procedures, customs and/or patterns and practices ratified by the Jail Defendants and Birch.

40.     Upon information and belief, Defendant Kelly Birch and the Jail failed to promulgate and implement, and knowingly failed to enforce, adequate medical policies responsive to the serious medical needs of inmates like Mr. Foutch. In particular, during all times pertinent, upon information and belief, there were no guidelines, or wholly inadequate guidelines, in place as to the standard of care specific to inmates' medical needs. Upon information and belief, the Jail and Birch were charged with reviewing and approving these medical policies, procedures and guidelines and did not ever perform this task.

41.     The Jail and Birch have maintained a policy, practice and/or custom of providing untimely assessment, identification and treatment of inmates' medical needs, in disregard of known, obvious and excessive risks to health and safety of inmates like Mr. Foutch. The Jail and Birch have engendered a lax environment wherein timely assessment and treatment by qualified professionals is not emphasized.

42.     Upon information and belief, the jail and Birch have maintained a policy, practice and or custom of severely limiting the use of off-site medical and diagnostic service providers, even in emergent situations, in disregard to known, obvious and excessive risks to the health and safety of inmates like Mr. Foutch. This policy, practice and/or custom is especially applicable to inmates like Mr. Foutch who were housed in the jail but were legally in custody of the Department of Corrections. By severely curtailing the use of off-site medical or diagnostic service providers, the Jail and Birch assured that inmates with serious medical diagnostic needs cannot be adequately assessed or treated on-site will simply not receive the care they need.

43.     Birch and the Jail have failed to adequately train Jail personnel and staff with respect to the proper assessment, classification and treatment of inmates with serious medical needs. Specifically, Birch and the Jail failed to provide proper training and supervision over the methods and techniques for emergency aid, CPR and the ability to assist a patient struggling to breathe. Without this training, Jail personnel, unsupervised licensed practical nurses, and certified medical assistants were charged with making decisions regarding inmate medical care without oversight. The failure to properly know the procedure, training and techniques for properly aiding and inmate undergoing an emergency, such as loss of consciousness and difficulty breathing, was a proximate cause that failed to save the life of Mr. Foutch at a critical juncture before his passing. This failure to train and supervise constitutes deliberate indifference to the health and safety of inmates like Mr. Foutch.

44.     Upon information and belief, Birch and the Jail are, and have been, on notice that their policies, practices and/or customs are inadequate to meet the medical needs of inmates like Mr. Foutch. Nonetheless, these Defendants have failed to reform those policies, practices and/or customs.

### **FIRST CLAIM FOR RELIEF**

**Cruel and Unusual Punishment in Violation of the Eighth and Fourteenth
Amendments to the Constitution of the United States (42 U.S.C. § 1983)
against All Named Defendants**

45.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 44, as though fully set forth herein.

46.     Defendants Jail, Turn-Key, Birch, Jane Doe Nurses I and II, and Jane/John Does III - X knew there was a strong likelihood that Mr. Foutch's condition would cause death or permanent injury. Mr. Foutch had obvious, serious and emergent medical issues and needs,

including pneumonia and other illnesses unknown to Plaintiffs but made known to these Defendants throughout the time Mr. Foutch was in custody.

47.     Nonetheless, these defendants disregarded the known and obvious risks to Mr. Foutch's health and safety.

48.     All defendants failed to provide, *inter alia*: an adequate or timely medical evaluation, any assessment, or adequate medical monitoring and supervision or to otherwise care for Mr. Foutch while he was placed under their care, in deliberate indifference to Mr. Foutch's serious medical needs, health and safety.

49.     As a direct and proximate result of all defendants' conduct, Mr. Foutch experienced severe physical pain, severe emotional distress, severe mental anguish, loss of his life and all other compensatory damages alleged herein or otherwise recoverable by his estate.

50.     There is an affirmative link between (1) the aforementioned acts and/or omissions of these Defendants in being deliberately indifferent to Mr. Foutch's serious medical needs, health and safety and (2) the polices, practices and/or customs which the Jail, Turn-Key, and Birch respectively promulgated, created, implemented and/or were responsible for maintaining.

51.     Such policies, practices and/or customs include, but are not limited to:

   a.     The failure of each entity or individual to promulgate, implement or enforce, adequate medical treatment policies responsive to the serious medical needs of inmates like Mr. Foutch;

   b.     Severe limitation of the use of off-site medical service providers, even in emergent situations, at the Jail;

   c.     Untimely medical examinations and treatment at the Jail.

d.      Understaffing medical personnel at their Jail or under-training employees and/or officers on how to identify, assess or react to emergent medical situations;

e.      Jail's failure to adequately train Jail personnel and staff with respect to the proper assessment, classification and treatment of inmates with serious medical needs;

f.      Jail's failure to supervise, oversee or otherwise require the jail medical staff to actually discharge their duties in protection if inmate health and safety;

g.      The failure of each entity or individual to follow medical orders and/or properly dispense prescribed medications and/or treatments;

h.      Failure to do routine checks on inmates

i.      Jail's failure to properly supervise sick inmates;

j.      Jail's persistent ignoring of complaints.

52.      All Defendants knew and/or it was obvious that the maintenance of the aforementioned polices, practices and/or customs posed an excessive risk to the health and safety of inmates like Mr. Foutch.

53.      All Defendants through continued encouragement, ratification and approval of the aforementioned polices, practices and/or customs, in spite of their known and/or obvious inadequacies and dangers, have been deliberately indifferent to inmates', including Mr. Foutch's, serious medical needs.

54.     There is an affirmative link between the unconstitutional acts of the Jail's subordinates and Jail's adoption and/or maintenance of the aforementioned policies, practices and/or customs.

55.     As a direct and proximate result of the aforementioned policies, practices and/or customs, Mr. Foutch experienced severe physical pain, severe emotional distress, severe mental anguish, humiliation, loss of his life and all other compensatory damages alleged herein or otherwise recoverable by his estate or its beneficiaries.

56.     Defendants Jail Trust, Turn-key, and Kelly Birch were charged with implementing and developing the policies of the Creek County Public Facilities Authority with respect to the medical care of inmates at the Creek County Jail and have the responsibility to adequately train

and supervise said employees. At all times pertinent hereto, all Jail Defendants were acting under color of state law.

57.     At all times pertinent hereto, all Jail Defendants were acting under color of state law.

58.     Defendants Jail Trust, Turn-Key, and Kelly Birch are involved in, and exert control over, the Jail's medical program.

59.     Defendants Jail Trust, Turn-Key, and Kelly Birch control the policies and practices of the Jail, particularly with respect to medical care provide at the Jail.

60.     There is an affirmative link between the deprivation of Mr. Foutch's right to be free of cruel and unusual punishment and policies, practices and/or customs which the Jail, Turn Key, and Birch promulgated, created, implemented and/or were responsible for maintaining.

61.     Such policies, practices and/or customs include, but are not limited to:

    a.  The failure to promulgate, implement or enforce adequate medical treatment policies responsive to the serious medical needs of inmates like Mr. Foutch;

    b.  Severe limitation of the use of off-site medical service providers, even in emergent situations, at the Jail;

    c.  Untimely medical examinations and treatment at the Jail.

    d.  Understaffing medical personnel at their Jail or under-training employees and/or officers on how to identify, assess or react to emergent medical situations;

e.   Jail's failure to adequately train Jail personnel and staff with respect to the proper assessment, classification and treatment of inmates with serious medical needs;

f.   Jail's failure to supervise, oversee or otherwise require the jail medical staff to actually discharge their duties in protection if inmate health and safety;

g.   The failure of each entity or individual to follow medical orders and/or properly dispense prescribed medications and/or treatments;

h.   Failure to do routine checks on inmates

i.   Jail's failure to properly supervise sick inmates;

j.   Jail's persistent ignoring of complaints.

62.   The Jail, Turn Key, and Birch knew and/or it was obvious that the maintenance of the aforementioned policies, practices and/or customs posed and excessive risk to the health and safety of inmates like Mr.Foutch.

63.   All defendants disregarded the known and/or obvious risks to the health and safety of inmates like Mr. Foutch. Jane Doe Nurses I and II, Jane/John Does III – X, and other jail and medical staff interacted and observed Foutch's condition on multiple occasions before his death without taking any action to aid him.

64.   The Jail and Birch tacitly encouraged, ratified, and/or approved the acts and/or omissions alleged herein, knew (and/or it was obvious) that such conduct was unjustified and would result in violations of constitutional rights, and were deliberately indifferent to the serious medical needs of inmates like Mr. Foutch.

65.   Kelly L. Foutch, as Administrator of the Estate of Russell Ted Foutch demands judgment against the Creek County Public Facilities Authority, Kelly Birch, Turn-Key Health,

LLC, Jane Doe Nurse I, Jane Doe Nurse II, and Jane/John Does III – X  for compensatory damages in the amount of $500,000.00.

### 42 U.S.C. § 1983 Supervisory Liability
### against Jail Administrator Kelly Birch, Individually

66.     Kelly L. Foutch, Administrator of the Estate of Russell Ted Foutch, alleges and realleges Paragraphs numbered one (1) thorough sixty-five (65), above, with the same force and effect as if fully set forth herein.

67.     Jail Administrator Kelly Birch breached a duty to Decedent which was the proximate cause of Decedent's injuries. Specifically, Kelly Birch personally involved himself in the constitutional violation against Decedent by participating in the creation of flawed training protocols and acknowledged tolerance of numerous constitutionally infirm activities of his subordinate officers including (a) failure to provide adequate or timely medical evaluation or assessment, (b) failure to take precautionary measures such as necessary scans or x-rays (or to request their completion from qualified local practitioners), (c) failure to administer prescribed medication, and (d) severely curtailing and deterring use of off-site medical providers for in-custody inmates. Additionally, Kelly Birch exercised control and discretion over all other defendants' activities who committed prior instances of ignoring medical needs against similarly situated citizens. Further, Kelly Birch failed to properly discipline and supervise employees or subcontractors that engaged in deliberately indifferent and/or negligent actions towards inmate. Finally, Kelly Birch knew of these violations of citizen's constitutional rights and acquiesced in their continuance.

68.     Jail Administrator Kelly Birch promulgated, created, implemented, or utilized policies that caused the deprivation of Decedent's rights. Kelly Birch knew and/or it was obvious that the maintenance of the aforementioned formal policies, practices and/or widespread customs

and the failure to train and properly supervise jail and medical staff would result in the Constitutional violations such as those suffered by Decedent. The constitution mandates Kelly Birch, in a supervisory role over all officers, to promulgate, create, and/or maintain a series of rules and procedures designed to prevent Decedent's unconstitutional injuries.

69.     Poorly trained and improperly supervised jail and medical staff present a known and obvious risk of abuse of power and negligence to the population of Creek County. Jail Administrator Kelly Birch disregarded the known and obvious risks to citizens like Decedent and acquiesced, enabled, and ratified the actions of his subordinates.

70.     Jail and medical staff acted in accordance with the above-mentioned rules and procedures from Kelly Birch. Alternatively, Jail and medical staff acted in accordance and as a result of the failure to be trained, supervised, or dismissed, and, in so doing, proximately caused damages incurred by Decedent.

71.     As a direct and proximate result of the Kelly Birch's actions, Decedent suffered and died.

72.     Kelly L. Foutch, as Administrator of the Estate of Russell Ted Foutch demands judgment against Kelly Birch for compensatory damages in the amount of $500,000.00.

### *42 U.S.C. § 1983 Municipal Liability*
### *against Creek County Public Facilities Authority and their final policymaker: Jail Administrator, Kelly Birch in his Official Capacity*

73.     Kelly L. Foutch, Administrator of the Estate of Russell Ted Foutch, alleges and realleges Paragraphs numbered one (1) thorough seventy-two (72), above, with the same force and effect as if fully set forth herein.

74.     The Jail Administrator is responsible for the promulgation, creation, implementation, and enforcement of the rules, procedures, policies and widespread customs of the

Creek County Jail and its employees.   At the time of Mr. Foutch's sickness and death, Jail
Administrator Kelly Birch occupied the role of Jail Administrator.

75.     The following, among others that will be developed in discovery, informal customs
or practices are so persistent and widespread that they are the standard operating procedure for the
Creek County Jail:

(a) failure to provide adequate or timely medical evaluation or assessment, (b)
failure to take precautionary measures such as necessary scans or x-rays (or to
request their completion from qualified local practitioners), (c) failure to administer
prescribed medication, (d) inadequate medical triage screening, (e) understaffing
the medical unit, (f) failure to adequately train jail and medical staff employees
and/or agents with respect to proper assessment, classification, and treatment of
inmates with serious health needs; (g) failure to promote necessary documentation
and administration of medication; (h) failure to refer emergent situations to nursing
staff; and (e) severely curtailing and deterring use of off-site medical providers for
in-custody inmates. Additionally, Kelly Birch exercised control and discretion over
all other defendants' activities who committed prior instances of ignoring medical
needs against similarly situated citizens. Further, Kelly Birch failed to properly
discipline and supervise employees or subcontractors that engaged in deliberately
indifferent and/or negligent actions towards inmate.

76.     There is an affirmative link between the aforementioned acts and omissions of
Defendants and the informal customs or practices of the Creek County Public Facilities authority
via their final policymaker Kelly Birch. The customs or practices are the direct cause in fact of
Plaintiff's Constitutional injury.

77.     Additionally, Creek County Public Facilities authority via their final policymaker Kelly Birch is responsible for the adequate training and supervision of jail and medical staff employed by the Creek County Jail and Turn-Key Health. The training related to preservation of Constitutional protections and adequate medical treatment are designed to protect the Constitutional rights of subjects and citizens from errors of jail and medical staff in the performance of their duties. Supervision allows for oversight and correction of unconstitutional behavior and practices. The Jail Administrator failed to adequately train and/or supervise its jail and medical staff related to adequate medical treatment and the Eighth and Fourteenth Amendment protections afforded pursuant to the United States Constitution. There is an obvious need to adequately train and supervise Jail and medical staff to alleviate the plainly obvious consequence of Eighth and Fourteenth Amendment violations.

78.     The failure to train these employees and/or agents in the timely and adequate provision of medical care set into motion the series of events resulting in Decedent's deprivation of Constitutional rights. The failure to provide oversight, supervision and discipline for offending conduct is also affirmatively linked to Decedent's constitutional injuries and damages.

79.     The Creek County Public Facilities authority via their final policymaker Kelly Birch knew and/or should have known it was obvious that the maintenance of the aforementioned actions, inactions and/or omissions would be substantially certain to result in the Constitutional violations such as those suffered by Decedent. The Jail consciously chose to disregard these obvious risks.

80.     Poorly trained and improperly supervised jail and medical staff overseeing confined inmates present a known and obvious risk of abuse of power to the population of the Creek County

Jail. The Creek County Public Facilities authority via their final policymaker Kelly Birch disregarded the known and obvious risks to citizens like Decedent.

81.    Jail and medical staff acted in accordance with the above-mentioned official formal policies and/or widespread customs of the County or as a result of the failure to be trained, supervised, and/or as a result of being improperly retained, and, in so doing, proximately caused damages incurred by Decedent.

82.    The Creek County Public Facilities authority via their final policymaker Kelly Birch enabled and allowed this unconstitutional injury through continued encouragement, ratification and approval of the aforementioned policies, practices and/or customs and lack of training and supervision, in spite of the known inadequacies and unlawfulness, were each, and collectively, deliberately indifferent to the valuable constitutional rights of individuals like Decedent.

83.    As a direct and proximate result of the Creek County Public Facilities authority via their final policymaker Kelly Birch's actions, Decedent lost his life.

84.    Kelly L. Foutch, as Administrator of the Estate of Russell Ted Foutch demands judgment against final policymaker Kelly Birch for compensatory damages in the amount of $500,000.00.

## SECOND CLAIM FOR RELIEF
### *Negligence/Wrongful Death against*
### *Defendants Turn-Key Health, LLC, Jane Doe Nurse I and Jane Doe Nurse II[1]*

85.     Kelly L. Foutch, Administrator of the Estate of Russell Ted Foutch, alleges and realleges Paragraphs numbered one (1) through eighty-four (84), above, with the same force and effect as if fully set forth herein.

86.     Defendants owed a duty to Mr. Foutch, and all other inmates in custody, to use reasonable care to provide inmates in need of medical attention with appropriate assessment, evaluation, treatment, and supervision.

87.     Defendants breached that duty by failing to provide Mr. Foutch with prompt and adequate medical assessment, evaluation, treatment, and supervision despite the obvious need.

88.     Defendants' breaches of duty of care include, *inter alia,* the failure to: provide an adequate or timely health evaluation; provide any assessment, including further scans or x-rays of Mr. Foutch's probable chest infections and/or breathing difficulties; provide proper classification and segregation of Mr. Foutch as being seriously ill and in need of care; provide timely or adequate health and/or medical treatment for Mr. Foutch; promptly evaluate and transfer Mr. Foutch to an appropriate and qualified treatment or medical facility; provide adequate monitoring or supervision

---

[1] Plaintiff's tort claims are properly brought against Turn Key, Jane Doe Nurse I, and Jane Doe Nurse II and their employees and agents. The Oklahoma Supreme Court held In *Sullins v. American Medical Response of Oklahoma, Inc.,* 23 P.3d 259, 264 (Okla. 2001), that a private entity such as Turn-Key Is not an "entity designated to act In behalf of the State or political subdivision [which Includees a public trust]" for the purposes of exemption under 51 Okla. Stat. 152(2), merely because It contracts with a public trust to provide services which the public trust Is authorized to provide. *See also Arnold v. Cornell Companies, Inc., 2008).*

of Mr. Foutch's condition (including *inter alia,* failure to check and respond to vital signs); and take precautions to prevent Mr. Foutch from being continuously harmed.

89.     As a direct and proximate cause of Defendants' negligence, Mr. Foutch experienced physical pain, severe emotional distress, mental anguish, loss of his life, and the damages alleged herein.

90.     As a direct and proximate cause of Defendants' negligence, Mr. Foutch's heirs have suffered damages in excess of $75,000.00, including, but not limited to, pecuniary loss (including lost wages), loss of consortium, grief, loss of companionship, pain and suffering in violation of 12 O.S. § 1053.

### THIRD CLAIM FOR RELIEF
*Negligent conduct, training, hiring, and supervision*
*against Creek County Public Facilities Authority[2]*

91.     Kelly L. Foutch, Administrator of the Estate of Russell Ted Foutch, alleges and realleges Paragraphs numbered one (1) thorough ninety (90), above, with the same force and effect as if fully set forth herein.

92.     Upon information and belief, Jail and medical staff were known to the County or by exercise of ordinary care could have been known by it at time of employment to be careless, negligent, and/or indifferent to the medical needs of inmates. Multiple other citizens were negligently cared for by the current and previous medical providers and jail staff at the Creek County Jail. Multiple other injuries occurred at the jail due to insufficient medical attention being provided to inmates.

---

[2] Decedent's estate mailed notice of a claim under the Oklahoma Governmental Tort Claims act to Creek County Clerk on or about October 21, 2016. Decedent's claim was delivered by certified mail on October 24, 2016. The mandatory ninety (90) day waiting period before denial of a claim is assumed fell on or about January 23, 2017 and has since passed. The County's time for denial of the claim has since passed and their response is deemed as a denial. Plaintiff timely files this lawsuit within the one hundred-eighty (180) day limitations period.

93.     The Creek County Public Facilities Authority owed a duty of care to Decedent to not subject him to its employees who would risk careless, negligent, reckless or intentional physical harm against him. The Creek County Public Facilities Authority also owed a duty of care to Decedent to hire, train, and supervise its employees in a manner that would promote safety, ethical action, and responsibility of its employees who interact with the population of the Creek County Jail.

94.     The Creek County Public Facilities Authority breached the duty of care to Plaintiff when they hired new medical staff (including Jane Doe Nurse I and Jane Doe Nurse II as well as Jane/John Does III – X), failed to effectively train jail and medical staff, failed to supervise jail and medical staff, and failed to take any necessary steps to ensure that jail and medical staff was ready and able to perform his duty in an ethical and safe manner. The care provided to decedent was unreasonable, negligent, careless, and ignored his very serious, obvious, and emergent needs.

95.     The actions, inactions, and omissions of the Jail were the direct and proximate cause of injuries sustained by Decedent. Jail trust employees and agents negligently failed to provide ordinary and reasonable care for Mr. Foutch as his obvious condition deteriorated. On a number of occasions, employees and agents of the jail refused to provide adequate aid and care to Mr. Foutch.

96.     As a result of the conduct of the County, its employees and/or agents, Decedent suffered and ultimately lost his life. Decedent's estate and heirs also suffered immensely at the death of Decedent. The aforementioned damages are in an amount in excess of $75,000.00.

### FOURTH CLAIM FOR RELIEF
*Violation of Oklahoma Constitution
against all named defendants*

97.     Kelly L. Foutch, Administrator of the Estate of Russell Ted Foutch, alleges and realleges Paragraphs numbered one (1) thorough ninety-six (96), above, with the same force and effect as if fully set forth herein.

98.     Pursuant to Okla. Const. art. II, § 9, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishments inflicted." Pursuant to Okla. Const. art. II, § 7, "No person shall be deprived of life, liberty, or property, without due process of law." Under *Bosh v. Cherokee County Bldg. Authority,* 305 P.3d 994, 2013 OK 9, a private cause of action exists for inmates to recover for violations of the provisions of the Okla. Const. art. 2.

99.     Defendant Creek County Public Facilities Authority is responsible for the conduct, acts, and omissions of its employees and/or agents when an employee and/or agent violatess the Oklahoma Constitution in the scope of their employment.

100.    There is an affirmative link between the deprivation of Mr. Foutch's right to be free of cruel and unusual punishment and policies, practices and/or customs which the Jail and Birch promulgated, created, implemented and/or were responsible for maintaining.

101.    Such policies, practices and/or customs include, but are not limited to:

    a.     The failure to promulgate, implement or enforce adequate medical treatment policies responsive to the serious medical needs of inmates like Mr. Foutch;

    b.     Severe limitation of the use of off-site medical service providers, even in emergent situations, at the Jail;

    c.     Untimely medical examinations and treatment at the Jail by the jail and its employees and/or agents.

    d.     Understaffing medical personnel at their Jail or under-training employees and/or officers on how to identify, assess or react to emergent medical situations;

e.      Jail's failure to adequately train Jail personnel and staff with respect to the proper assessment, classification and treatment of inmates with serious medical needs;

f.      Jail's failure to supervise, oversee or otherwise require the jail medical staff to actually discharge their duties in protection if inmate health and safety;

g.      The failure of the Jail, Jail employees and/or agents, and Medical staff to follow medical orders and/or properly dispense prescribed medications and/or treatments;

h.      Failure by Jail and medical staff to do routine checks on inmates

i.      Jail's failure to properly supervise sick inmates;

j.      Jail's persistent ignoring of complaints.

102.    The Jail and Birch knew and/or it was obvious that the maintenance of the aforementioned policies, practices and/or customs posed and excessive risk to the health and safety of inmates like Mr. Foutch.

103.    The Jail and Birch disregarded the known and/or obvious risks to the health and safety of inmates like Mr. Foutch.

104.    The Jail and Birch tacitly encouraged, ratified, and/or approved the acts and/or omissions alleged herein, knew (and/or it was obvious) that such conduct was unjustified and would result in violations of constitutional rights, and were deliberately indifferent to the serious medical needs of inmates like Mr. Foutch.

105.    As a result of the conduct of the County, its employees and/or agents, Decedent suffered and ultimately lost his life. Decedent's estate and heirs also suffered immensely at the death of Decedent. The aforementioned damages are in an amount in excess of $75,000.00.

**WHEREFORE**, based on the foregoing, Kelly L. Foutch, on behalf of the Estate of Russell Ted Foutch prays for a judgment in excess of $725,000.00 against these Defendants for

actual, compensatory and all applicable categories of damages, reasonable attorney's fees, costs

of this action and for all other relief allowable according to law.

Date:   July 20, 2017

Respectfully submitted,

/s/Andrew M. Casey
Carla R. Stinnett, OBA No. 19532
Andrew M. Casey, OBA No. 32371
STINNETT LAW
404 East Dewey Avenue, Suite No. 202
Sapulpa, OK 74066
Telephone: (918) 227-1177
Facsimile:  (918) 227-1197
Email: carla@stinnettlaw.com
**ATTORNEYS FOR PLAINTIFF**

**JURY TRIAL DEMANDED**