IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KELLY L. FOUTCH, administrator of the Estate of RUSSELL TED FOUTCH, deceased,<br><br>Plaintiff,<br><br>v.<br><br>TURN KEY HEALTH, LLC, d/b/a TURN KEY MEDICAL, and TURN KEY; CREEK COUNTY PUBLIC FACILITIES AUTHORITY; JANE DOE NURSE I; JANE DOE NURSE II; and JOHN/JANE DOES III–X,<br><br>Defendants. | Case No. 17-CV-431-GKF-JFJ |

## OPINION AND ORDER

Before the court is the "Partial Motion to Dismiss" [Doc. No. 22] of defendant Creek County Public Facilities Authority (the Jail). Plaintiff Kelly L. Foutch, as administrator of the Estate of Russell Ted Foutch, deceased, brings three claims against the Jail: (1) a federal civil rights claim pursuant to 42 U.S.C. § 1983; (2) a pendent state claim for negligent conduct, training, hiring, and supervision; and (3) a claim for violations of Sections 7 and 9 of Article II of the Oklahoma Constitution. The Jail moves to dismiss the negligence and state constitutional claims for failure to state a claim upon which relief can be granted.

**I.     The Allegations**

Russell Foutch died on September 30, 2016 while in the physical custody of the Jail. The Jail contracted with defendant Turn Key, LLC to provide medical staff and services at the Jail in order to provide healthcare to its inmate population. Four days before he died, Mr. Foutch struggled to breathe. Inmates reported that it sounded as if he had fluid in his lungs. As a group,

they requested that Foutch receive a medical evaluation. Upon completion of the evaluation, Foutch was told he needed an antibiotic but would not receive one because a doctor could not be contacted. Three days before he died, Foutch lost consciousness on the floor of the jail's day room, but no one employed by the Jail or Turn Key came to assist. Foutch was observed coughing up blood, and appeared blue, with jaundiced eyes. Other inmates requested medical attention for Mr. Foutch but were ignored. Two days before he died, Foutch received one breathing treatment and was told Jail staff would come and get him for another, but that did not occur. The day before he died, Mr. Foutch's cellmate found him unconscious and purple in color on the floor of his cell. Three Jail guards came and had Foutch walk to the front of the jail while he complained of shortness of breath, difficulty breathing, and a headache. On the day of his death, Mr. Foutch again coughed up blood. After eating lunch, Foutch returned to his cell where he again lost consciousness and turned blue. Mr. Foutch was taken to a hospital, where emergency room doctors pronounced him dead within two minutes of his arrival.

## II. The Negligence Claim

Plaintiff contends that Jail employees and agents negligently failed to provide ordinary and reasonable care for Mr. Foutch as his condition deteriorated, and that the Jail breached its duty of care to Mr. Foutch by failing to effectively train and supervise its jail and medical staff.

The Jail argues it is immune from suit on the negligence claim because Oklahoma's Governmental Tort Claims Act (OGTCA) exempts it from liability. The OGTCA provides that a governmental entity shall not be liable if a claim results from "[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility . . . ." 51 O.S. § 155(25). The Oklahoma Supreme Court interprets this language broadly:

> Reading [Section 155(25)] reveals an intent to withhold the waiver of sovereign immunity for any loss or injury, whether to an inmate or other person, resulting

> from the operational level acts required to furnish the services of a penal institution, including the . . . medical and health services or any other service provided for inmates or other persons . . . .

*Medina v. State*, 871 P.2d 1379, 1384 n.13 (Okla. 1993). Stated differently, the legislative intent of § 155(25) is "to protect the state from liability for loss resulting from *any and all actions* of officers and employees of a penal institution." *Gooding v. Ketcher*, 838 F. Supp. 2d 1231, 1243 (N.D. Okla. 2012) (quoting *Redding v. State*, 882 P.2d 61, 63 (Okla. 1994)). The negligence claim in this case falls squarely within this exception, and must be dismissed.

### III. The *Bosh* Claim

Relying on *Bosh v. Cherokee Bldg. Auth.*, 305 P.3d 994 (Okla. 2013), plaintiff contends the Oklahoma Constitution provides her a private right of action for violation of Mr. Foutch's rights under sections 7 (right of due process of law) and 9 (cruel or unusual punishments prohibited) of Article II.[1] In *Bosh*, the Oklahoma Supreme Court decided that article II, section 30 of the Oklahoma Constitution provides a private right of action for excessive force, notwithstanding provisions of the OGTCA immunizing the state from liability for such claims. *See id.* at 1001. In reaching this result, the 7-2 majority stated that:

> The OGTCA cannot be construed as immunizing the state completely from all liability for violations of the constitutional rights of its citizens. To do so would not only fail to conform to established precedent which refused to construe the OGTCA as providing blanket immunity, but would also render the Constitutional protections afforded the citizens of this State as ineffective,and a nullity. Therefore, we . . . hold that the Okla. Const. art. 2, § 30 provides a private cause of action for excessive force, notwithstanding the requirements and limitations of the OGTCA.

---

[1] Section 7 states: "No person shall be deprived of life, liberty, or property, without due process of law." Section 9 states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishments inflicted."

*Id.*[2] More recently, in *Deal v. Brooks*, 389 P.3d 375, 384 (Okla. Civ. App. 2016), the Oklahoma Court of Civil Appeals held that article II, section 7 of the Oklahoma Constitution provided a private cause of action for a child whose due process rights had been violated by reckless and deliberate acts of the Department of Human Services. There, the Court of Civil Appeals wrote:

> As in *Bosh*, where the Oklahoma Supreme Court declined to construe the GTCA so as to immunize the state from constitutionally-based liability for excessive force inflicted *on a prisoner* while in its custody, we conclude the GTCA does not immunize [the Oklahoma Department of Human Services] from liability for certain reckless and deliberate acts that deprive a *child* of due process rights while in state custody. To decide otherwise would render as ineffective, and a nullity, a child's fundamental "interest in safe conditions, personal security, and bodily integrity for persons in state custody" guaranteed under the due process clause of both the United States Constitution and the Oklahoma Constitution.

*Id.* (emphasis in original). The Oklahoma Supreme Court subsequently approved *Deal* for publication, so the opinion is accorded precedential value. *Deal v. Brooks*, 2016 OK 123 (Okla. 2016); *see also* OKLA. SUP. CT. R. 1.200(e).

As the Jail points out, the Oklahoma Supreme Court has not fashioned a *Bosh* claim under Article II, Sections 7 or 9 for alleged denial of inmate medical care. *Bosh* recognized a private cause of action by pre-trial detainees for excessive force in violation of Article II, § 30; and *Deal* recognized a private cause of action for reckless and deliberate acts that deprived a child of substantive due process in violation of Article II, § 7. Neither decision created a private cause of action under Article II, § 7 for denial of inmate medical care, or under Article II, § 9.

To permit plaintiff's state constitutional claim to proceed would require this court to extend *Bosh* and *Deal* beyond their holdings. Federal courts "are generally reticent to expand

---

[2] One year later, in *Perry v. City of Norman*, 341 P.3d 689, 693 (Okla. 2014), the Oklahoma Supreme Court held that a *Bosh* claim for excessive force could not be brought when a cause of action under the OGTCA is available. Here, plaintiff does not have a remedy under the OGTCA.

state law without clear guidance from its highest court." *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1284 (10th Cir. 2013). That is especially true here, given that the requested expansions present questions of state constitutional law which would have significant consequences on state interests.[3] Without any clear guidance from the Oklahoma Supreme Court, the court declines to extend *Bosh* and *Deal* beyond their holdings to create a private cause of action under Article II, §§ 7 and 9 for alleged denial of inmate medical care. Therefore, the Jail's motion to dismiss plaintiff's state constitutional claim is granted.

## IV. Conclusion

WHEREFORE, the Creek County Public Facilities Authority's Motion to Dismiss plaintiff's negligence and state constitutional claims [Doc. No. 22] is granted.

ORDERED this 9th day of April, 2018.

GREGORY K. FRIZZELL, CHIEF JUDGE

---

[3] Oklahoma Federal Courts have generally been reluctant to expand the scope of *Bosh* claims beyond circumstances approved by the Oklahoma Supreme Court. *See Hedger v. Kramer*, 2013 WL 5873348, at *2–3 (W.D. Okla. Oct. 30, 2013) (declining to extend *Bosh* excessive force claims beyond its particular circumstances); *Koch v. Juber*, 2014 WL 2171753, at *3 (W.D. Okla. May 23, 2014) ("*Bosh* does not serve to create a private right of action for all claims arguably arising under the Oklahoma Constitution"); *Bruning v. City of Guthrie,* 2015 WL 4925995, at *8-9 (W.D. Okla. Aug. 18, 2015); *Langkamp v. Mayes Emergency Servs. Tr. Auth.*, 2017 WL 2819003, at *5–7 (N.D. Okla. June 29, 2017) (expressing reluctance to expand *Bosh* beyond its holding, where plaintiffs asserted claims under article II, sections 2 (inherent right to life, liberty, and the pursuit of happiness), 3 (right of assembly and petition), 7, and 22 (right of free speech and press), but finding no conflict between the Oklahoma Constitution and the OGTCA because plaintiff had a cause of action under the OGTCA); *but see Miller v. City of Konowa*, 2017 WL 6328942, at *3–4 (E.D. Okla. Dec. 11, 2017) (noting *Bosh* has not been limited to its facts and holding plaintiff had stated a viable *Bosh* claim in the context of a sexual harassment suit).